IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| HENRY SEELIGSON, JOHN M. SEELIGSON, SUZANNE SEELIGSON NASH, and SHERRI PILCHER, individually and on behalf of all others similarly situated, | § § § § § | |
| | § | Civil Action No. 2:14-cv-00996 |
| Plaintiffs, | § § § | **PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT** |
| v. | § § | **JURY TRIAL DEMANDED** |
| DEVON ENERGY PRODUCTION COMPANY, L.P., | § § § § | |
| Defendant. | § § | |

1.      Plaintiffs Henry Seeligson, John M. Seeligson, Suzanne Seeligson Nash, and Sherri Pilcher (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated, bring this class action, by and through their attorneys, against Defendant Devon Energy Production Company, L.P. ("DEPCO" or "Defendant"). The following allegations are based on personal knowledge as to Plaintiffs' own conduct and are made on information and belief as to all other matters based on investigation by counsel.

I.      **NATURE OF THE CASE**

2.      Plaintiffs bring this class action to recover damages for DEPCO's unlawful conduct in improperly calculating and intentionally underpaying millions of dollars in royalties owed to Plaintiffs and other lessors for the extraction of gas from Texas wells that was processed through the Bridgeport Gas Processing Plant (the "Plant" or "Bridgeport Plant") from January 1, 2008 through February 28, 2014 ("Class Period").

3.      As stated herein, throughout the Class Period, DEPCO breached its obligations to Plaintiffs and the Class by systematically and intentionally underpaying royalties owed to

1

Plaintiffs and Class members. Supporting this scheme were non-arm's-length transactions with its affiliate, Devon Gas Services, L.P. ("DGS"), that DEPCO used to justify paying artificially low royalties on residue gas and natural gas liquids ("NGLs") based on artificial prices or values that were substantially lower than any price or value a prudent or diligent operator would have obtained under the same or similar facts and circumstances and were a direct result of DEPCO's agreement with DGS. The prices received by DEPCO were substantially lower due to the inclusion of an unreasonable and lucrative 17.5% processing fee for its affiliate, DGS, which was imposed upon Plaintiffs and Class members.

4. The built-in processing fees were neither reasonable nor "cost-of-service" based, but were instead marked-up to provide additional revenue and a profit and/or return on invested capital to DGS, and ultimately, the parent corporation of both DEPCO and DGS, Devon Energy Corporation ("DEC"). DEPCO, through its non-arm's-length agreement with DGS, agreed to pay DGS fees that greatly exceeded DGS's actual costs. DEPCO, in turn, passed these artificial, inflated, and unreasonable fees along to Plaintiffs and the Class members in the form of a substantially lower price used to compute royalty payments. These fees were inflated, improper, and completely unrelated to the actual costs-of-service and merely served to enrich DEPCO and its affiliates. These fees were a lucrative profit center for DEPCO and its affiliates, and applied to all Class members.

5. In addition to imposing artificial costs and fees, DEPCO also allowed DGS to improperly retain profits from the sale of Plaintiffs' and the Class members' production that was processed through the Bridgeport Plant, without properly accounting for those profits to Plaintiffs or the Class. DEPCO's failure to monitor the profits being made by DGS for its sales to third parties and to remit these proceeds to Plaintiffs and the Class violated DEPCO's

obligations under the relevant agreements and applicable Texas law.  As a result, Plaintiffs and the Class have suffered substantial damages.

## II. PARTIES

### A. Plaintiffs

6. Plaintiff Henry Seeligson is an individual residing and domiciled in Dallas, Texas and a citizen of the State of Texas.  Throughout the Class Period, Henry Seeligson had oil and gas leases with Defendant for wells in Denton County, Texas and elsewhere that produced gas that was processed through the Bridgeport Plant, and suffered injuries as a result of the conduct set forth herein.

7. Plaintiff John Seeligson is an individual residing and domiciled in Dallas, Texas and a citizen of the State of Texas.  Throughout the Class Period, John Seeligson had oil and gas leases with Defendant for wells in Denton County, Texas and elsewhere that produced gas that was processed through the Bridgeport Plant, and suffered injuries as a result of the conduct set forth herein.

8. Plaintiffs Suzanne Seeligson Nash is an individual residing and domiciled in Dallas, Texas and a citizen of the State of Texas.  Throughout the Class Period, Suzanne Seeligson had oil and gas leases with Defendant for wells in Denton County, Texas and elsewhere that produced gas that was processed through the Bridgeport Plant, and suffered injuries as a result of the conduct set forth herein.

9. Plaintiff Sherri Pilcher is an individual residing and domiciled in Dallas, Texas and a citizen of the State of Texas.  Throughout the Class Period, Sheri Pilcher had oil and gas leases with Defendant for wells in Denton County, Texas and elsewhere that produced gas that was processed through the Bridgeport Plant, and suffered injuries as a result of the conduct set forth herein.

B.     **Defendant**

10.    Defendant DEPCO is an Oklahoma limited partnership authorized to do business in Texas and operates oil and gas wells in Texas, including Denton County. DEPCO's only general partner is DVN Operating Company, L.L.C., which has one member, Devon OEI Operating, L.L.C., which also has one member, Devon OEI, L.L.C. Devon OEI, L.L.C. is wholly owned by Devon OEI Holdings, Inc., a Delaware corporation with its principal place of business in Oklahoma. Devon OEI Holdings, Inc. is directly owned by DEC.

11.    DEC is the ultimate parent company of both DEPCO and DGS. DEPCO, DGS, DEC, and other DEC affiliates share "(1) common officers, directors, and employees (paid and employed by Defendant); (2) common ownership; (3) common financial interest and control; (4) the same offices, business names, and logos; (5) comingled property; (6) consolidated financial statement and tax returns; (7) shared services and capital expenses; and (8) common business identities in the ordinary course of business."[1]

12.    DEPCO and its affiliates consider and treat themselves as a single entity and DEPCO encouraged royalty owners to consider its affiliates "one big company."[2] The management and operations are assimilated to the extent that DEPCO and DGS act as conduits through which DEC, the parent, conducts its business.

13.    The seven most senior officers of DEPCO, DGS, and DEC are all the same and have been the same during the relevant time period. DEC, DEPCO, DGS, and other DEPCO affiliates have shared common offices since October 2012 at 333 West Sheridan, Oklahoma City,

---

[1]  *Shoop v. Devon Energy Prod. Co., L.P.*, No. 3:10-cv-00650-P, 2013 U.S. Dist. LEXIS 188345, at *51 (N.D. Tex. Mar. 28, 2013) ("*Shoop*").

[2]  *Shoop*, 2013 U.S. Dist. LEXIS 188345, at *7.

Oklahoma 73102, and prior to October 2012, at 20 North Broadway, Oklahoma City, Oklahoma 73102, which is/was the principal place of business for DEPCO, DEC, and DGS.[3]

14. DEPCO and DGS share mutual operations and DEPCO's positive operating capital may be used to cover DGS's operating capital needs.[4] DEPCO even funded DGS's costs for processing gas. From 2004 through 2010, alone, DEPCO transferred over $1 billion to DGS for gas processing.[5] In reality, DEPCO and DGS operate as a single unified company.

15. Defendant has been the subject of a prior lawsuit related to its underpayment of royalties to oil and gas lessors. *See Shoop, et al., v. Devon Energy Production, Co., L.P.*, No. 10-cv-650 (N.D. Tex.). On March 28, 2013, the Honorable Jorge A. Solis entered an order denying, in part, DEPCO's motion for summary judgment in *Shoop*.[6] Among other things, Judge Solis held that:

(a) genuine issues of material fact exist as to whether DEPCO and DGS structured a wellhead sale that was "atypical and commercially unreasonable";[7] and

(b) genuine issues of material fact exist as to whether DEPCO breached the implied covenant to market by engaging in self-dealing and negligence.[8]

16. Approximately three months after Judge Solis' summary judgment ruling, the *Shoop* action was dismissed following a settlement between the parties. *See Shoop*, ECF No. 172.

---

[3] Plaintiff's First Amended Complaint, ECF No. 69 at 22, *Shoop v. Devon Energy Prod. Co., L.P.*, 3:10-cv-00650-P (N.D. Tex.).

[4] *Shoop*, 2013 U.S. Dist. LEXIS 188345, at *8.

[5] *Id*.

[6] *Id.* at *3.

[7] *Id.* at *48.

[8] *Id.* at *46-47.

5

### III. JURISDICTION AND VENUE

17. The Court has jurisdiction pursuant to 28 U.S.C. §1332(d) because Plaintiffs and members of the Class are citizens of a state different from the Defendant, and the amount in controversy exceeds $5 million.

18. The Court has personal jurisdiction over Defendant because DEPCO is authorized to do business in Texas, regularly conducts business in Texas, and has committed the acts complained of herein, within this judicial district in Texas.

19. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) as Defendant is deemed to reside in this district and oil and gas wells at issue in the litigation are located in Denton County, Texas and a substantial part of the events or omissions giving rise to the claims alleged herein—namely, DEPCO's purported wellhead sales to DGS on which Plaintiffs' royalties are based—occurred in Denton County, Texas.

### IV. FACTUAL BACKGROUND

#### A. DEPCO Ensures that All Roads Lead to the Bridgeport Plant

20. Plaintiffs and Class members own royalty interests in Texas wells that produce gas that was processed through the Bridgeport Plant. DEPCO is the operator of such wells and/or the entity required to remit revenue to Plaintiffs and Class members.

21. All of the gas subject to this action was processed through the Bridgeport Plant by DGS.

22. Once gas arrives at the Bridgeport Plant, raw "wet" natural gas is processed by the Plant to remove contaminants and to separate the methane portion of the gas, i.e., the dry "residue gas," and NGLs so that the methane gas is suitable for injection or delivery into gas transmission pipelines and marketable for sale at the tailgate of the Plant.

6

23. As part of the processing activities at the Plant, certain volumes of NGLs are processed and fractionated (or separated) into their separate components, which are ethane, propane, butane, isobutane, and natural gasoline, for sale.

24. DEPCO "sold" all of the residue gas and associated NGLs produced from those properties in which Plaintiffs and Class members own royalty interests to its affiliate, DGS, at the wellhead according to the terms of the Gas Purchasing and Processing Agreement ("GPPA").[9] The GPPA, executed in 2005, but effective June 2000, states that the sale of gas from DEPCO to DGS occurs at the point of delivery, and restricts DEPCO from negotiating different terms for the sale of gas to DGS over a 28 year period.[10] The GPPA established a pricing scheme whereby the value of residue gas was determined monthly by an unspecified "price index."[11] The value of the NGLs each month was determined by "a weighted average configured by the net average local sales price, less a marketing fee, in combination with a price index."[12]

25. DEPCO's starting point for calculating royalties for gas was to use the weighted average of *Inside FERC*'s published index gas prices for residue gas (subject to adjustments or deductions), and, for NGLs, the weighted average of the prices for NGLs sold at the Plant and the published *Mt. Belvieu OPIS* prices for NGLs sold at other locations.

26. After the weighted averages of the index-based prices was determined, DEPCO then (i) calculated prices by multiplying the weighted averages of published gas and NGL index-based prices less adjustments or deductions by an arbitrary percentage (that is less than 100%)

---

[9]   *Shoop*, 2013 U.S. Dist. LEXIS 188345, at *4.

[10]  *Id.* at *4-5.

[11]  *Id.* at *5.

[12]  *Id.* at *5-6.

7

and (ii) deducted from those prices certain other post-production fees, costs and expenses to arrive at a net price.

27. Under the GPPA pricing scheme, DEPCO ultimately received 82.5% of the weighted average prices of the residue gas and NGLs processed by DGS, *while DGS retains a fee of 17.5%*.[13] The 17.5% fee retained by DGS is neither reasonable nor related to actual costs or fees incurred and is hidden by DEPCO in its royalty statements as the statements do not include all of the information related to pricing and deductions, provide less information than required by Texas law, and are insufficient to enable Plaintiffs and Class members to determine exactly how DEPCO calculated the royalty.

28. Further, DGS was prohibited from profiting at DEPCO's expense. "[U]nder the Transfer Pricing Guidelines—as applicable to the GPPA—DGS may not make a profit at the expense of Defendant (i.e. sell gas to third parties at prices higher than the transfer prices under the GPPA)."[14] DEPCO never enforced the Transfer Pricing Guidelines under the GPPA and, instead, allowed DGS to retain profits from sales to unaffiliated third parties, contrary to the GPPA. The profits ultimately benefitted Defendant and its affiliates.

### B. The Terms of the Sales of Gas from DEPCO to DGS Are Not Arm's-Length or Reasonable

29. By forcing the gas extracted from Plaintiffs' and the Class's wells to be processed through the Bridgeport Plant with an associated artificial "fee", DEPCO created a built-in profit center through which Plaintiffs and the Class received substantially lower royalties than they would had DEPCO acted as a reasonably prudent operator.

---

[13]   *Shoop*, 2013 U.S. Dist. LEXIS 188345, at *5-6.

[14]   *Id.* at *6.

30. DEPCO purports to justify its underpayment of royalties through the artifice that it separately "sold" the NGLs and the residue gas to DGS, at the well. However, the terms of the purported sale of gas from DEPCO to DGS, with the concomitant 17.5% fee, is an unfair, unreasonable, and non-arm's-length transaction structured solely to increase profits for DEPCO and its affiliates at the expense of Plaintiffs and the Class. DEPCO cannot use the terms of such sales as a vehicle to unfairly deprive Plaintiffs and Class members of their rightful royalties in violation of Texas law.[15]

31. The terms of these non-arm's-length sales breach the implied covenant to market that arises under Texas law. The implied covenant requires the lessee to manage and administer the lease and reasonably market the oil and gas.[16] The standard required in discharge of this duty is that of highest good faith or the best of good faith. The duty exists to protect lessors from a lessee's self-dealing and negligence, and reasonableness is viewed in light of the lessee's actual conduct.[17]

32. DEPCO breached the implied covenant to market as a reasonably prudent operator by entering into non-arm's-length transactions with DGS, the terms of which were designed to deprive Plaintiffs and Class members of their rightful royalties, while simultaneously generating unlawful and unfettered profits for Defendant and its affiliates. DEPCO paid artificially low royalties based on a price or value that was substantially lower than any price or value a prudent or diligent operator would have obtained under the same or similar facts and circumstances due to a built-in unreasonable and lucrative processing fee for its affiliate, DGS,

---

[15] *Shoop*, 2013 U.S. Dist. LEXIS 188345, at *49-50.

[16] *Id.* at *46-47.

[17] *Id.* at *47.

which was imposed upon Plaintiffs and Class members. DEPCO could have reasonably obtained a higher price or value through a lower processing fee from DGS, but failed to do so.

33. DEPCO's use of such non-arm's-length transactions to enrich itself and its affiliates was not limited to the unreasonable 17.5% processing fee. Once the gas left the Plant, DGS sold the residue gas and NGLs in bona fide arm's-length sales to unaffiliated third parties for a profit. None of the royalties paid to Plaintiffs and Class members were based on DGS's bona fide arm's-length sales of the gas to third parties. Instead, DEPCO calculated the royalties it paid to Plaintiffs and Class members based on the artificial "price" it manufactured as part of its non-arm's-length transaction with DGS rather than the (higher) price that DGS received from unaffiliated third parties, which includes a profit. The GPPA specifically required that DGS not profit at DEPCO's expense.[18] However, DEPCO never enforced the Transfer Pricing Guidelines under the GPPA and instead allowed DGS to make unaccounted for profits from sales to unaffiliated third parties.

34. Part and parcel with its non-arm's-length sales to DGS, DEPCO failed to market the gas at a reasonable price, failed to monitor DGS's profits on sales of residue gas and NGLs to unaffiliated third parties, and failed to take action to recover any difference for Plaintiffs and Class members. DEPCO negligently or willfully failed to require DGS to provide an accounting of its profits to DEPCO and, ultimately, the royalty owners.

35. DEPCO's failure to enforce the Transfer Pricing Guidelines under the GPPA and its self-dealing by agreeing to terms in order to benefit itself and its affiliates constitute breaches of the underlying agreements and violates Texas law.[19]

---

[18]   *Shoop*, 2013 U.S. Dist. LEXIS 188345, at *6.

[19]   *See id.* at *48-49.

36. The non-arm's-length sales to DGS are used by DEPCO to circumvent its obligations under the leases. As explained by the *Shoop* court:

> a fact issue remains that ***Defendant may have violated its implied covenant to market***. Zeroing in on Defendant's actions, ***if Defendant is indeed not enforcing the Transfer Pricing Guidelines as the evidence suggests, it would be acting negligently in breach of its implied covenant to market***. Beyond this, viewed in the light most favorable to Plaintiffs, Defendant may have agreed to certain terms in order to benefit itself and other Devon affiliates. This creates a fact issue related to self-dealing. Importantly, while Defendant argues that no other purchaser would or even could pay a higher price than DGS, this contention does not address its actual conduct or the suspect peripheral circumstances surrounding the GPPA arrangement. . . . Defendant cannot resolve or tie up the fact issues surrounding this request for summary judgment that implicates both self-dealing and negligence.

*Shoop*, 2013 U.S. Dist. LEXIS 188345, at *48-49.

37. Plaintiffs have performed all obligations required by law and have satisfied all conditions precedent to bringing this action.

38. As a result of the manner and method of DEPCO's reporting and remittance of royalties, DEPCO's unlawful conduct has been inherently undiscoverable absent the full disclosure of such information by DEPCO. Plaintiffs and Class members did not know, and through the exercise of due diligence, could not have known of the extent of DEPCO's wrongful acts giving rise to their claims and damages prior to this litigation. Plaintiffs and Class members affirmatively plead the doctrines of fraudulent concealment and the discovery rule, and allege that their claims are not precluded by the statute of limitations.

V. **CLASS ACTION ALLEGATIONS**

39. Plaintiffs bring this action pursuant to Federal Rules of Civil Procedure 23(a),(b)(2) and/or (b)(3) on behalf of the following Class:

> All persons or entities who, from or after January 1, 2008, (i) are or were royalty owners in Texas wells producing natural gas that was processed through the Bridgeport Gas Processing Plant by Devon Gas Services, LP ("DGS"); (ii) received royalties from Devon Production Company, L.P. ("DEPCO") on such gas; and (iii) had oil and gas leases that require DEPCO to pay royalty, when gas is sold at the well, based on the amount realized or net proceeds of such sale.

40. The persons or entities excluded from the Class are: (a) overriding royalty interest owners who derive their interest through the oil and gas lease; (b) all governmental entities, including federal, state and local governments and their respective agencies, departments, or instrumentalities; (c) the States and territories of the United States or any foreign citizens, states, territories or entities; (d) the United States of America; (e) publicly traded entities and their respective parents, affiliates, and related entities (f) owners of any interests and/or leases located on or within any federally created units; (g) owners of any non-operating working interest for which DEPCO or its agents or representatives, as operator, disburses royalty; (h) DEPCO and any entity in which DEPCO has a controlling interest, and their officers, directors, legal representatives and assigns; and (i) members of the judiciary and their staff to whom this action is assigned.

41. The Class is so numerous that joinder of all members is impracticable.

42. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy.

43. Plaintiffs' claims are typical of the claims of the Class. As alleged herein, Plaintiffs and members of the Class all sustained damages arising out of Defendant's common course of unlawful conduct.

44. There are questions of law and fact common to the Class, including but not limited to:

- whether, and to what extent, DEPCO breached its leases with Class members or violated Texas law by agreeing to terms in the GPPA that reduced the price on which royalty payments were based through an unreasonable processing fee (17.5%), when DEPCO could have reasonably obtained a higher price through a lower processing fee from DGS but failed to do so; and

- whether, and to what extent, DEPCO breached its leases with Class members or violated Texas law by failing to monitor and take action to recover any profits DGS generated from the subsequent sale of residue gas to third parties.

45. Class action status is warranted under Rule 23(b)(3) because questions of law or fact common to the members of the Class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

46. Plaintiffs anticipate no difficulty in the management of this matter as a class action.

## VI. COUNTS

### COUNT I

### Breach of Contract

47. The allegations of paragraphs 1 through 46 are incorporated by reference into this Count I as though fully set forth herein.

48. DEPCO's production of natural gas from certain Texas wells that was processed through the Bridgeport Plant is burdened by Plaintiffs' and Class members' royalty interests that derive from oil and gas leases. The leases are contracts between DEPCO and the Plaintiffs and Class members. The leases do not permit DEPCO to deduct artificial, inflated, and unreasonable fees for costs, or base royalty calculations on the terms of unreasonable and non-arm's-length contracts or transactions. DEPCO materially breached its obligation to pay royalties pursuant to these oil and gas leases through its persistent and regular practices of underpaying royalties. Specifically, DEPCO materially breached the oil and gas leases by paying artificially low

royalties based on a price or value that was substantially lower than any price or value a prudent or diligent operator would have obtained under the same or similar facts and circumstances due to a built-in unreasonable and lucrative processing fee for its affiliate, DGS, which was imposed upon Plaintiffs and Class members. DEPCO could have reasonably obtained a higher price or value through a lower processing fee from DGS but failed to do so. DEPCO, notwithstanding its right and obligation to do so, also failed on an ongoing basis to monitor actual, higher prices received by DGS from third parties and failed to take appropriate action to recover the difference for Plaintiffs and Class members. DEPCO committed such breaches knowingly and intentionally through non-arm's-length affiliate transactions, and then concealed the breaches from Plaintiffs and Class members.

49. The breaches by DEPCO were done intentionally to increase profits for itself and its affiliates (including DGS and DEC) by reducing the economic cost of the royalties through underpayment of royalties owed to Plaintiffs and Class members.

50. DEPCO's breaches of the leases caused injury to Plaintiffs and Class members.

51. As a direct and proximate result of DEPCO's actions, Plaintiffs and Class members have incurred actual damages, which they are entitled to recover from DEPCO.

52. Plaintiffs and Class members are entitled to recover their reasonable and necessary attorney's fees and litigation costs and expenses incurred in the prosecution of this claim, pursuant to TEX. CIV. P. & REM. CODE § 38.001 *et seq*.

## COUNT II

### Breach of Implied Covenant to Market

53. The allegations of paragraphs 1 through 52 are incorporated by reference as though fully set forth herein.

54. DEPCO is subject to an implied covenant to manage and administer the leases it obtained from Plaintiffs and Class members. The implied covenant to manage and administer includes the implied covenant to market, which extends to the Plaintiffs and Class members. Under that implied covenant, at all times, DEPCO was and is obligated to market the natural gas production in good faith and accordance with the standard of a reasonably prudent operator, which protects the lessors (Plaintiffs and the Class members) from self-dealing and negligence.

55. DEPCO breached its implied covenant to market by failing to act as a reasonably prudent operator by structuring non-arm's-length sales to DGS in a manner that was intended to deprive Plaintiffs and Class members of benefits of their lease agreements—specifically, their rightful royalties. DEPCO, in violation of its implied covenant to market, used the GPPA and sales thereunder to DGS to benefit itself and its affiliates by establishing a wellhead price for gas that was substantially lower than any price or value a prudent or diligent operator would have obtained under the same or similar facts or circumstances due to a built-in unreasonable and lucrative processing fee for its affiliate, DGS, which was imposed upon Plaintiffs and Class members. DEPCO could have reasonably obtained a higher price or value through a lower processing fee from DGS, but failed to do so. DEPCO's conduct in this respect frustrated the purpose of the leases.

56. DEPCO also breached its implied covenant to market because, notwithstanding its transfer pricing guidelines applicable to the GPPA, it failed on an ongoing basis to monitor actual, higher prices received by DGS from third parties and failed to take appropriate action to recover the difference for Plaintiffs and Class members.

57. As stated above, DEPCO's breaches of the implied covenant are accompanied by both negligence and self-dealing.

58. Based on the foregoing and other matters alleged herein, DEPCO has failed to act in good faith, consistent with its implied covenant to market, and as a reasonably prudent operator.

59. DEPCO's acts were deliberately undertaken to wrongfully deprive Plaintiffs and Class members of their lawful rights and interests, including the right to receive full and proper royalties.

60. DEPCO's breach of the implied covenant to market caused injury to Plaintiffs and Class members.

61. As a direct and proximate result of DEPCO's breaches, Plaintiffs and Class members have incurred actual damages, which they are entitled to recover from DEPCO.

62. Plaintiffs and Class members are entitled to recover their reasonable and necessary attorney's fees and litigation costs and expenses incurred in the prosecution of this claim, pursuant to TEX. CIV. P. & REM. CODE § 38.001 *et seq*.

## VII.  REQUEST FOR RELIEF

WHEREFORE, Plaintiffs request that this Court enter a judgment against Defendant and in favor of Plaintiffs and the members of the Class and award the following relief:

(a) Order that this action be certified as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, declaring Plaintiffs as the representatives of the Class and Plaintiffs' counsel as counsel for the Class;

(b) Declare, adjudge and decree that the conduct alleged herein is unlawful;

(c) Declare that DEPCO has failed to properly calculate and pay royalty to Plaintiffs and members of the Class, and otherwise determine the rights and obligations of the parties;

(d) Award compensatory damages, statutory interest, pre-judgment interest, post-judgment interest, attorney's fees and court costs as permitted by law;

(e)     Award such other relief as the Court deems just and equitable.

## VIII. <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs demand a trial by jury on all issues so triable.

Dated: June 10, 2015

Respectfully submitted,

By: s/ *George L. McWilliams*
George L. McWilliams
Texas Bar No. 13877000
**LAW OFFICES OF GEORGE L. McWILLIAMS, P.C.**
P.O. Box 58
Texarkana, Texas-Arkansas 75504
Tel: (870) 772-2055
Fax: (870) 772-0513
Email: glmlawoffice@gmail.com

**KESSLER TOPAZ MELTZER & CHECK, LLP**
Sean Handler (admitted *pro hac vice*)
Pennsylvania Bar No. 86693
Naumon Amjed (admitted *pro hac vice*)
Pennsylvania Bar No. 309520
Ryan Degnan (admitted *pro hac vice*)
Pennsylvania Bar No. 309305
280 King of Prussia Road
Radnor, PA 19087
Tel: (610) 667-7706
Fax: (610) 667-7056
Email: shandler@ktmc.com
Email: namjed@ktmc.com
Email: rdegnan@ktmc.com

**SEIDEL LAW FIRM, P.C.**
Brad E. Seidel
Texas Bar No. 24008008
6 Hedge Lane
Austin, TX 78746
Tel: (512) 537-0903
Email: bradseidel@me.com

**WICK PHILLIPS GOULD & MARTIN, LLP**
David Drez
Texas Bar No. 24007127
100 Throckmorton Street, Suite 500

17

Fort Worth, TX 76102
Tel: (817) 332-7788
Fax: (817) 332-7789
Email: david.drez@wickphillips.com

**MATTINGLY & ROSELIUS, PLLC**
Jason E. Roselius (to be admitted *pro hac vice*)
Oklahoma Bar No. 16721
Jack Mattingly, Jr. (admitted *pro hac vice*)
Oklahoma Bar No. 16136
Brian L. Cramer (admitted *pro hac vice*)
Oklahoma Bar No. 20661
13182 N. MacArthur Blvd.
Oklahoma City, OK 73142
Tel: (405) 603-2222
Fax: (405) 603-2250
Email: jason@mroklaw.com
Email: jack@mroklaw.com
Email: brian@mroklaw.com

**MATTHEW TYLER SHOOP, ATTORNEY AT LAW**
Matthew Tyler Shoop
Texas State Bar No. 24070613
4525 Emerson Ave., No. 2
Dallas, TX 75205
Tel: (310) 729-5700
Email: tylershoop@gmail.com

**KEIL & GOODSON P.A.**
Matt Keil
Texas Bar No. 11181750
Arkansas Bar No. 86099
John C. Goodson
Arkansas Bar No. 90018 (*admitted pro hac vice*)
406 Walnut Street
Texarkana, Arkansas 71854
Tel: (870) 772-4113
Fax: (870) 773-2967
Email: mkeil@kglawfirm.com
Email: jcgoodson@kglawfirm.com

*Counsel for Plaintiffs and Proposed Class*

**CERTIFICATE OF SERVICE**

  I hereby certify that on June 10, 2015, a true and correct copy of the foregoing document was electronically filed with the Clerk of the Court, is available for viewing and downloading from the ECF system, and will be served by operation of the Court's electronic filing system (CM/ECF) upon all counsel of record.

                *s/ George L. McWilliams*
                George L. McWilliams