# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| HENRY SEELIGSON, JOHN M. SEELIGSON, SUZANNE SEELIGSON NASH, and SHERRI PILCHER, individually and on behalf of all others similarly situated, | § § § § § § | |
| Plaintiffs, | § § | |
| v. | § § § | Civil Action No. 3:16-CV-00082-K |
| DEVON ENERGY PRODUCTION COMPANY, L.P., | § § § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Plaintiffs' Motion to Reconsider Order Denying Class Certification and Motion for Leave to File Second Class Certification Motion (Doc. No. 151). After careful review and consideration of the Motions, responses, replies, pleadings on file, relevant portions of the record, evidence submitted by the parties, and the applicable law, the Court **GRANTS** Plaintiffs' Motion to Reconsider the Court's Order Denying Class Certification. Further, as detailed below, because Henry Seeligson, John Seeligson, Suzanne Seeligson Nash, and Sherri Pilcher have met the requirements of Federal Rule of Civil Procedure 23 to certify a class action, the Court **GRANTS** Plaintiffs' Motion for Class Certification. Accordingly, the Court **DENIES as moot** Plaintiffs' Motion for Leave to File Second Class Certification Motion.

## I.      Factual Background

Henry Seeligson, John M. Seeligson, Suzanne Seeligson Nash, and Sherri Pilcher (collectively, the "Proposed Class Representatives," or "Plaintiffs") brought this action on behalf of similarly situated royalty owners alleging that Defendant Devon Energy Production Company, L.P. ("DEPCO") improperly and intentionally underpaid royalties owed to Plaintiffs and class members for gas that was processed through the Bridgeport Gas Processing Plant (the "Bridgeport Plant").

Plaintiffs and proposed class members own or owned royalty interests in wells that produce gas that was processed through the Bridgeport Plant of DEPCO (the "Class Wells"). DEPCO serves as either the lessee, operator, or the entity required to remit revenue to royalty owners for the Class Wells. In some instances, DEPCO assumes all three of these roles. DEPCO sold residue gas and natural gas liquids ("NGLs") from the Class Wells at or near the wellhead to Devon Gas Services, LP ("DGS"). These sales are governed by one common contract—the Gas Purchasing and Processing Agreement ("GPPA"). Under the GPPA, DGS purportedly paid DEPCO prices equal to 82.5 percent of the value of the residue gas and NGLs, and deducted 17.5 percent as a processing fee.

Plaintiffs claim that DEPCO essentially passed the 17.5 percent processing fee on to them and all class members by reducing their royalty payments by 17.5 percent. Plaintiffs also allege that this processing fee was artificially inflated and that it resulted in a price or value that was substantially lower than any price or value a

prudent or diligent operator would have obtained under the same or similar facts or circumstances. Plaintiffs further contend that DEPCO could have reasonably obtained a higher price or value through a lower processing fee from DGS but failed to do so in order to secretly create a lucrative profit center for DEPCO, DGS, and their parent company, Devon Energy Corporation, at the expense of Plaintiffs and the Class.

Plaintiffs also allege that DEPCO after the sale of the gas to DGS then allowed DGS to improperly retain profits from the sale of Plaintiffs' and the class members' gas that was processed through the Bridgeport Plant, without properly accounting for those profits to Plaintiffs or the Class. Plaintiffs state that DEPCO's failure to monitor DGS's profits for its sales to third parties and remit proceeds to Plaintiffs and the Class violated DEPCO's obligations under the relevant agreements and applicable Texas law.

## A.   Central Issues in the Case

In short, there are two central issues in this case: (1) Did the 82.5% value sale of residue gas and NGLs violate DEPCO's duty to market owed to royalty owners; and (2) Did DEPCO violate its duty to market owed to royalty owners by failing to recover profits from DGS for gas sales DGS made to third parties?

## II.   Procedural History

Plaintiffs filed this case in the Eastern District of Texas, a district in which some of their wells are located. That Court established a class certification briefing schedule which included a day-long evidentiary hearing on class certification on November 16, 2015. The parties conducted discovery and prepared their briefs under the impression that they would have the opportunity to present at the evidentiary hearing additional evidence and testimony not cited in their briefing. The Court apparently intended to admit the parties' supplemental exhibits into evidence and make them part of the class certification record during or after the class certification hearing.

On October 22, 2015, DEPCO filed an Emergency Motion to Stay the proceedings in the Eastern District pending final resolution of DEPCO's motion to transfer venue from the Marshall Division of the Eastern District of Texas to the Sherman Division of the Eastern District of Texas. DEPCO apparently sought the same relief from the Fifth Circuit and on November 9, 2015, the Fifth Circuit granted DEPCO's Motion to Stay until its motion to transfer venue was resolved. As a result, the class certification hearing was postponed.

Ultimately, this case was transferred to the Northern District of Texas on January 12, 2016. The scheduled class certification hearing the parties anticipated in the Eastern District did not occur and the parties were not able to supplement their evidence and argument at that time. On February 11, 2016, this Court denied Plaintiffs' Motion for Class Certification, Appointment of Class Representatives and

Appointment of Class Counsel. On February 25, 2016, Plaintiffs filed these Motions, asking the Court to reconsider its order denying class certification and for leave to file a second class certification motion. Plaintiffs also filed a Motion for Leave to File Additional Evidence in Support of its Motion for Class Certification. The Court granted Plaintiffs' Motion for Leave to Supplement Class Certification Record and set a hearing on these Motions.

The Court held a hearing on these Motions on May 4, 2016. At the hearing, counsel for all parties presented argument and evidence on Plaintiffs' Motion to Reconsider Order Denying Class Certification, Plaintiffs' Motion for Leave to File Second Class Certification Motion, and Plaintiffs' Motion for Class Certification.

## III.    Plaintiffs' Motion for Reconsideration

Although the Federal Rules of Civil Procedure do not explicitly provide for a motion for reconsideration, Federal Rule of Civil Procedure 23(c)(1)(C) permits courts to alter or amend an order that grants or denies class certification before final judgment. FED. R. CIV. P. 23(c)(1)(C); *see also Salazar-Calderon v. Presidio Valley Farmers Ass'n*, 765 F.2d 1334, 1350–51 (5th Cir. 1985)("The certification decision 'is not irreversible and may be altered or amended at a later date.'"); *Richardson v. Byrd*, 709 F.2d 1016, 1019 (5th Cir. 1983) ("Under Rule 23 the district court is charged with the duty of monitoring its class decisions in light of the evidentiary development of the case."). The Fifth Circuit interprets motions to reconsider dispositive pretrial

orders as Rule 60(b) motions for relief from judgment or Rule 59(e) motions to alter or amend the judgment, depending on whether the motion is filed within ten days of the order's issuance. *See Shepherd v. Int'l Paper Co.*, 372 F.3d 326, 328 n.1 (5th Cir. 2004) (citing *Hamilton Plaintiffs v. Williams Plaintiffs*, 147 F.3d 367, 371 n.10 (5th Cir. 1998)). District Courts in the Fifth Circuit apply the same standards to motions to reconsider dispositive orders and motions to reconsider non-dispositive pretrial orders, including motions to reconsider an order denying class certification like the motion currently before the Court. *Krim v. pcOrder.com, Inc.*, 212 F.R.D. 329, 331 (W.D. Tex. 2002) (reconsidering order denying class certification) (citing *Texas Instruments, Inc. v. Hyundai Elec. Indus., Co.*, 50 F.Supp.2d 619, 621 (E.D. Tex. 1999)) (reconsidering order excluding evidence); *In re Ford Motor Co.,* No. Civ.A.MDL 991, 1997 WL 191488, at *2 (E.D. La. Apr. 17, 1997) (reconsidering order denying class certification and rejecting settlement proposal).

Since Plaintiffs' motion for reconsideration was filed more than ten days after the district court's order denying class certification, it is treated as a Rule 60(b) motion. *See Shepherd*, 372 F.3d at 328 n.1. Rule 60(b) of the Federal Rules of Civil Procedure provides several situations in which a Court may relieve a party from an order. FED. R. CIV. P. 60(b). In this case, the Court relieves Plaintiffs from its order denying class certification because the circumstances "justif[y] relief." *Id*.

As explained in the Procedural History section in this Memorandum Opinion and Order, this case was transferred to the Northern District of Texas from the

Eastern District of Texas. The parties expected to have a comprehensive class certification hearing. Plaintiffs expected to supplement the record with additional material evidence and briefing, including over one hundred exhibits, sizeable deposition designations, and the testimony of four live witnesses.   These circumstances justify relief under Rule 60(b) and the Court's denial of class certification warrants reconsideration with a complete record. Accordingly, the Motion to Reconsider the Denial of Class Certification is **GRANTED** and the Court now reconsiders Plaintiffs' Motion for Class Certification.

## IV.    Plaintiffs' Motion for Class Certification

Although Federal Rule of Civil Procedure 23 governs class certification, "in order to maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable." *Frey v. First Nat'l Bank Southwest*, 602 F. App'x 164, 168 (5th Cir. 2015) (quoting *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 639 (5th Cir. 2012)). A proposed class's definability and ascertainability are consequently implied prerequisites to Rule 23's requirements for class certification. *John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007) ("The existence of an ascertainable class of persons to be represented by the proposed class representative is an implied prerequisite of Federal Rule of Civil Procedure 23.").

Once the party seeking certification establishes that a putative class is definable and ascertainable, that party must demonstrate that the putative class meets all four requirements of Federal Rule of Civil Procedure 23(a) and at least one of the three requirements of Federal Rule Civil Procedure 23(b). *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011).   Under Rule 23(a), the party seeking certification must first demonstrate that:

> (1) the class is so numerous that joinder of all members is impracticable,
> (2) there are questions of law or fact common to the class,
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and
> (4) the representative parties will fairly and adequately protect the interests of the class.

FED. R. CIV. P. 23(a).

Second, the proposed class must satisfy at least one of the three requirements listed in Rule 23(b), which are:

> (1) prosecuting separate actions by or against individual class members would create risk of:
>> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
>> (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;
> (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or
> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual

members, and that a class action is superior to other available methods for fairly or efficiently adjudicating controversy.

FED. R. CIV. P. 23(b).

Plaintiffs bear the burden of showing that class certification is appropriate. *Unger v. Amedisys, Inc.*, 401 F.3d 316, 320 (5th Cir. 2005).  Class certification is at the discretion of this Court, which has inherent power to manage and control pending litigation.  *Fener v. Operating Eng'r Const. Indus. & Miscellaneous Pension Fund (Local 66)*, 579 F.3d 401, 406 (5th Cir. 2009). Although a court does not reach the merits of the case in evaluating whether class treatment is appropriate, it may look past the pleadings to understand the claims, defenses, relevant facts, and applicable substantive law to make a meaningful decision on class certification.  *Unger*, 401 F.3d at 321.

## A.    Definability and Ascertainability

The Court must determine that membership in a proposed class is "ascertainable by objective criteria" before it reaches the Rule 23 class certification analysis. Plaintiffs define the proposed class as follows:

> All person or entities who, between January 1, 2008 and February 28, 2014, (i) are or were royalty owners in Texas wells producing natural gas that was processed through the Bridgeport Gas Processing Plant by Devon Gas Services, LP ("DGS"); (ii) received royalties from Devon Production Company, L.P. ("DEPCO") on such gas; and (iii) had oil and gas leases that were on one of the following forms: Producers 88-198(R) Texas Paid-Up (2/93); MEC 198 (Rev. 5/77); Producers 88 (Rev 10-70 PAS) 310; Producers 88 Revised 1-53—(With Pooling Provision); Producers 88 (2-53) With 640 Acres Pooling Provision; Producers 88 (3-54) With 640 Acres Pooling Provision; Producers 88 (4-76) Revised

Paid Up with 640 Acres Pooling Provision; Producers 88 (7-69) With 640 Acres Pooling Provision; and Producers 88 (Rev. 3-42) With 40 Acres Pooling Provision ("The Class Lease Forms").

The persons or entities excluded from the Class are: (a) overriding royalty interest owners who derive their interest through the oil and gas lease; (b) all governmental entities, including federal, state and local governments and their respective agencies, departments, or instrumentalities; (c) the States and territories of the United States or any foreign citizens, states, territories or entities; (d) the United States of America; (e) publicly traded entities and their respective parents, affiliates, and related entities; (f) owners of any interests and/or leases located on or within any federally created units; (g) owners of any non-operating working interest for which DEPCO or its agents or representatives, as operator, disburses royalty; (h) DEPCO and any entity in which DEPCO has a controlling interest, and their officers, directors, legal representatives and assigns; and (i) members of the judiciary and their staff to whom this action is assigned.

Plaintiffs argue that based on this proposed definition, only those royalty owners with gas processed through the Bridgeport Plant who received royalty payments from DEPCO and whose leases are on the enumerated standardized, pre-printed lease forms are class members. Plaintiffs further argue that class members' identities are readily ascertainable through DEPCO's records. Plaintiffs' expert has apparently developed and implemented a manageable process to review and identify all leases on the Class Lease forms. Defendants argue that ascertaining the class will require the individual review and legal interpretation of all potential class leases, that determining past ownership of royalty interests and tying specific class leases to specific class members will require extensive individual title searches, and that Plaintiffs cannot identify who is excluded from the proposed class.

When analyzing the Defendant's position, those arguments create a higher standard for definability and ascertainability of potential class members than that required by the Fifth Circuit at this stage in the proceeding. "Ascertainability requires only that the court be able to identify class members at *some* stage of the proceeding." *Frey*, 602 F. App'x at 168. "The court need not know the identity of each class member before certification." *Id.*

The Court recognizes that identifying all class members in this case poses some administrative challenges. The Court is persuaded, though, that Plaintiffs have selected a feasible and manageable process to identify class members using DEPCO's records. The Court agrees with Plaintiffs that either through public or DEPCO records, or by affidavit, it is possible to identify each class member based on objective criteria. The Court finds that these records are sufficient objective criteria to ascertain the proposed class under Plaintiffs' proposed class definition.

B.      **Rule 23 (a) Requirements**

Rule 23 (a) requires a party seeking certification of a class to show that:

(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

FED. R. CIV. P. 23 (a). "Certification is proper only if 'the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.'" *Wal-*

*Mart Stores, Inc.*, 564 U.S. at 350–51 (quoting *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 156 (1982)). For the reasons detailed below, the Court concludes that Plaintiffs have satisfied the prerequisites Rule 23(a).

### 1.    Numerosity

Plaintiffs need only demonstrate "some evidence" or a "reasonable estimate" of the number of purported class members to satisfy Rule 23(a)'s numerosity requirement. *See James v. City of Dall.*, 254 F.3d 551, 570 (5th Cir. 2011) (citing *Pederson v. La. State Univ.*, 213 F.3d 858, 866 (5th Cir. 2000)). Classes of 100 to 150 members generally satisfy the numerosity requirement. *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999).

Plaintiffs' evidence shows that the proposed class contains over several thousand members. *See* Ex. 8, Harper Report at 18, App. Supp. Pl.'s Mot. Certify 18. Defendants do not contest numerosity in their response to Plaintiffs' motion. Accordingly, the Court finds that Plaintiffs have met their burden to show that the proposed class is so numerous that joinder in impracticable as required by Rule 23(a)(1).

### 2.    Commonality

Rule 23(a)'s commonality requirement – the requirement that there are questions of law or fact common to the class – is a key point of the parties' disagreement over class certification. The Court agrees with Plaintiffs and concludes

that there are questions of law or fact common to the class because the potential injury to the class members relates to when Defendant allegedly underpaid royalties by reducing the value of residue gas by 17.5 percent.

Rule 23(a) requires the claims of every class member to "depend upon a common contention . . . of such a nature that it is capable of classwide resolution — which means the determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 840 (5th Cir. 2012) (quoting *Wal-Mart Stores, Inc.*, 564 U.S. at 350). "In other words, Rule 23(a)(2) requires that a common issue of law or fact will resolve a central issue of each class member's claims." *Frey v. First Nat'l Bank Southwest*, 2013 U.S. Dist. LEXIS 37153 (N.D. Tex. Feb. 20, 2013) (quoting *Stukenberg*, 675 F.3d at 840).

Defendant's arguments are based, in large part, on the United States Supreme Court's holding in *Wal-Mart Stores, Inc. v. Dukes*. Defendant argues that in *Wal-Mart*, the Supreme Court held "that commonality depends on whether there are *common answers* to common questions." Def.'s Resp. in Opp. to Pltf.'s Mot. Class Cert., ECF No. 67, at 19. Defendant's argument correctly summarizes a portion of the commonality standard clarified by the Supreme Court in *Wal-Mart*, but it ignores the broader analysis the Supreme Court requires for determining whether commonality exists under Rule 23(a). In *In re Deepwater Horizion*, the Fifth Circuit addressed a

similarly "selective quotation" from *Wal-Mart* and reiterated the correct standard in

its entirety as follows:

> Commonality requires the plaintiff to demonstrate that the class members "have suffered the same injury." This does not mean merely that they have all suffered a violation of the same provision of law. Title VII, for example, can be violated in many ways—by intentional discrimination, or by hiring and promotion criteria that result in disparate impact, and by the use of these practices on the part of many different superiors in a single company. Quite obviously, the mere claim by employees of the same company that they have suffered a Title VII injury, or even a disparate-impact Title VII injury, gives no cause to believe that all their claims can productively be litigated at once. Their claims must depend upon a common contention—for example, the assertion of discriminatory bias on the part of the same supervisor. That common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.

*In re Deepwater Horizon*, 739 F.3d 790, 810 (5th Cir. 2014) (quoting *Wal-Mart Stores,*

*Inc.*, 564 U.S. at 350) (quotation marks and citations omitted).  The Fifth Circuit

explains further, "[t]o satisfy the commonality requirement under Rule 23(a)(2), class

members must raise at least one contention that is central to the validity of each class

member's claims." *In re Deepwater Horizon*, 739 F.3d at 810. The court also points out

that "'common answers' may indeed relate to the injurious effects experienced by the

class members, but they may also relate to the defendant's injurious conduct" and

that "even a single common question will do." *Id.* (quoting *Stukenberg*, 675 F.3d at

840).

Defendant asserts that determining whether it breached an implied covenant to market in any individual lease requires individual analysis of the circumstances specific to the gas production from each class member's lease. Defendant also argues that that different leases cannot generate common answers to a contract claim. It is clear to the Court, though, that Plaintiffs' claims in this case are based on two common questions related to DEPCO's duty to market. First, whether DEPCO breached its duty to market by selling gas to its affiliate for 82.5 percent of its value and paying royalty based on this reduced amount. Second, whether DEPCO breached its duty by not following its own policy to recoup the profits DGS made on subsequent gas sales.

### a)      Proceeds Leases v. Market-Value Leases

At the core of these two questions is the claim that DEPCO has employed a common course of conduct pursuant to standardized contracts. Proposed class members' claims are limited to questions of law and fact that arise from nine standard lease forms. All nine lease forms in question are "proceeds" leases – leases which require royalty payments to be calculated based on what the lessee actually receives for the gas. *Union Pac. Res. Grp., Inc. v. Hankins*, 111 S.W.3d 69, 72 (Tex. 2003) (citing *Yzaguirre v. KCS Res., Inc.,* 53 S.W.**3d** 368, 372 (Tex. 2001)). Under a

proceeds lease, a lessee is obligated "to obtain the best current price reasonably available." *Id.* Such an obligation does not extend to market-value leases. *Id.* Market-value leases contain an explicit requirement to pay royalties based on "the prevailing market price at the time of the sale or use" and consequently provide an objective basis for calculating royalties that is independent of the price the lessee actually obtains. *Id.* Under a market-value lease, "the lessor does not need the protection of an implied covenant to obtain the highest price reasonably available." *Id.* Plaintiffs' proposed class does not include any lessors with market-value leases.

### b)    Impact of the Nine Lease Forms on Class Certification

Texas law implies a duty to market gas in good faith as a reasonably prudent operator would under the same or similar circumstances in every proceeds lease, unless expressly addressed in the lease. *Id.* The existence of the implied duty to market in all nine class lease forms is essential to the common questions on which Plaintiffs base their claims and is therefore central to their argument in favor of class certification. Defendant argues that Plaintiffs "have not proved that the implied covenant to market exists classwide," because some lease forms contain express language which modifies or eliminates an implied duty to market. Defendant presumably bases its argument on the following clause from three of the nine Class Lease Forms:

> Lessee covenants and agrees to use reasonable diligence to produce, utilize, or market the minerals capable of being produced from said wells, but in the exercise of such diligence, lessee shall not be obligated to install or furnish facilities other than the well facilities and ordinary

16

lease facilities of flow lines, separator, and lease tank, and shall not be required to settle labor trouble or to market gas upon terms unacceptable to lessee.

The Court disagrees with Defendant's contention and believes that there is an implied duty for Defendant to market as a reasonably prudent operator classwide. Although the Court does not reach the merits of the case at this stage in the proceedings, the Court may look past the pleadings to understand the claims, defenses, relevant facts, and applicable substantive law to make a meaningful decision on class certification. *See Unger*, 401 F.3d at 321. The Court is convinced by Plaintiff's argument that an implied duty to market exists for Defendant for each class member. Plaintiffs offered evidence that this Court has previously encountered the same lease forms and language and concluded that the implied duty to market exists. *See Shoop v. Devon Energy Prod. Co., L.P.*, No. 3:10-cv-00650-P, 2013 U.S. Dist. LEXIS 188345, at *46–48 (N.D. Tex. Mar. 28, 2013) ("Where, as here, the contracting parties decline to address the subject, each oil and gas lease carries an implied covenant by the lessee to the lessor to manage and administer the lease . . . The implied convent bestows upon the lessee the duty to reasonably market the oil and gas.").

The Court agrees with Plaintiffs that none of the nine lease forms contain language that modifies the implied covenant to market and that the implied covenant to market controls. Even if the Court agreed with Defendants and concluded that an express covenant to market controls or modifies an implied covenant to market gas in

some of the lease forms at issue, this conclusion would not necessarily destroy commonality. In *Bowden v. Phillips Petroleum Co.,* the Supreme Court of Texas suggests that express duty to market clauses do not in practice require different conduct from the duty in the implied covenant to market. 247 S.W.3d 690, 701 (Tex. 2008). The central issues in this case – whether DEPCO violated its duty to market by selling gas to DGS for 82.5 percent of the value of the residue gas and NGLS and by failed to recover any profits DGS generated from the subsequent sale of residue gas to third parties – are common to all nine class lease forms. For this reason, Plaintiffs raise common questions which apply to a proposed class that may "have suffered the same injury." *See Wal-Mart Stores, Inc.*, 564 U.S. at 350. A jury's answers to these questions can resolve the four lead Plaintiffs' and all class members' claims in "one stroke." *Id.*

c)      **Are the Damages too Diverse for Class Certification?**

Defendant also argues that a jury assessing an alleged breach of the implied duty to market would have to conduct "month-by-month" and "well-by-well" analyses to determine the price a reasonably prudent operator would have received at the wellhead. "The legal requirement that class members have all 'suffered the same injury' can be satisfied by an instance of the defendant's injurious conduct, even

when the resulting injurious effects—the damages—are diverse." *In re Deepwater Horizon,* 739 F.3d at 810–11. In addition, a determination of whether DEPCO complied with its duty to market gas owed to each class member, "focuses on the behavior of the lessee." *Hankins,* 11 S.W.3d at 71. The common questions and corresponding potential injury all relate to the same alleged instance of DEPCO's injurious conduct. Even if potential damages calculations for individual class members present a challenge, this alone does not defeat commonality. Plaintiffs have proposed a class-wide damage model and have developed a thorough, systematic, and fair calculation for damages. The algorithm formula that Plaintiffs propose accounts for the 17.5 percent value reduction by Defendant and will effectively determine the damages for royalty payments that each Plaintiff is owed.

The Court concludes that Plaintiffs have raised "at least one contention that is central to the validity of each class member's claims." *See In re Deepwater Horizon,* 739 F.3d at 810. Plaintiffs' claims involve common questions of whether DEPCO breached its duty to market as a reasonably prudent operator and whether DEPCO violated its duty to royalty owners by failing to recover profits from DGS's sale of gas to third parties. These common contentions are readily susceptible to common proof and Plaintiffs have satisfied their burden and shown that, under these circumstances, a classwide proceeding has the capacity of generating common answers to drive the resolution of the litigation. *Wal-Mart Store, Inc.,* 564 at 349–50.

### 3.    Typicality

Rule 23 requires the claims of the representative parties to be typical of the proposed class members' claims. "The test for typicality is not demanding and is satisfied if the representative plaintiff's claims arise out of the same event or course of conduct as the other proposed class members', or are based on the same legal theory." *Frey*, 2013 U.S. Dist. LEXIS 37153, at *11–13 (citing *Forbush v. J.C. Penney Co.*, 994 F.2d 1101, 1106 (5th Cir. 1993); *Archdiocese of Milwaukee Supporting Fund, Inc. v. Halliburton Co.*, No. 3:02-CV-1152-M, 2012 U.S. Dist. LEXIS 24823, 2012 WL 565997, at *2 (N.D. Tex. Jan. 27, 2012)). The Court finds that Plaintiffs' claims are typical of the claims of the proposed class.

Plaintiffs' claims, like those of the proposed class, arise out of the same course of conduct: DEPCO's alleged underpayment of royalties that resulted from DEPCO's sale of gas to DGS and DEPCO's alleged failure to recover profits earned by DGS on the subsequent sale of gas to third parties. These claims are also based on the same legal theory: breach of the implied covenant to market gas as a reasonably prudent operator would under the same or similar circumstances. Plaintiffs, as the representative parties, have satisfied Rule 23's typicality requirement.

### 4.    Adequacy

Rule 23 requires representative parties to demonstrate that they "will fairly and adequately protect the interests of the class." There are three elements to the Court's adequacy inquiry: (1) the zeal and competence of the proposed class

representatives' counsel; (2) the willingness and ability of proposed class representatives to take an active role in and control the litigation and to protect the interests of absentees; and (3) the absence of conflict and antagonism between the named plaintiffs and the interests of the class they seek to represent. *See Feder v. Elec. Data Sys. Corp.*, 429 F.3d 125, 130 (5th Cir. 2005).

DEPCO does not seriously contest the zeal and competence of the proposed class representatives' counsel. The Court reviewed and considered the law firm résumés submitted by the proposed class representatives' counsel and finds that Kessler Topaz, the Seidel Law Firm, Wick Phillips, Hedrick Kring, and Mattingly Roselius possess the necessary experience and resources to zealously and competently prosecute the Class's claims. The Court does not believe at this time that George Louis McWilliams should be appointed as Liaison Counsel for this case.

DEPCO argues that Plaintiffs fail to prove they are adequate representatives because they lack basic knowledge of their own case. The Court disagrees. The proposed class representatives have demonstrated their "willingness" and "ability" to take an active role in and control the litigation and to protect the interests of absentees.  Class representatives need not have a high level of knowledge. *Frey,* 2013 U.S. Dist. LEXIS 37153, at *13-14. "Rather, a class representative is adequate if he or she has a general understanding of his or her position as a plaintiff and the alleged

21

wrongdoing of the defendant." *Id.* (citing *Kalodner v. Michaels Stores, Inc.*, 172 F.R.D. 200, 209 (N.D. Tex. 1997)). Plaintiffs have exhibited such a general understanding.

DEPCO further asserts that Plaintiffs cannot represent the claims of class members with different leases and that Plaintiffs cannot represent the claims of class members who settled with DEPCO. These arguments do not defeat Plaintiffs' adequacy as class representatives. First, the Court finds no differences among the leases in question that create conflicts or antagonism between Plaintiffs and the interests of the proposed class members. Second, as Plaintiffs point out, any class member barred from participating in this litigation as a result of settlement or res judicata can be excluded from the class when evidence supporting these defenses materializes.

Because Plaintiffs have satisfied all three elements of the Court's adequacy inquiry, the Court finds that Plaintiffs have demonstrated that they "will fairly and adequately protect the interests of the class."

### C.      Rule 23 (b) Requirements

A party seeking class certification must meet all four requirements of Federal Rule of Civil Procedure 23(a) and at least one of the three requirements of Federal Rule Civil Procedure 23(b). *Wal-Mart Stores, Inc.*, 564 U.S. 338 at 345.  Plaintiffs seek class certification under Federal Rule of Civil Procedure Rule 23(b)(3). This rule creates two requirements for class certification. First, the Court must find that the

questions of law or fact common to class members predominate over questions that affect individual members. FED. R. CIV. P. 23(b)(3). Second, the Court must conclude that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. *Id.*  As explained below, the Court finds that Plaintiffs have satisfied Rule 23(b)(3)'s dual "predominance" and "superiority" requirements.

### 1.    Predominance

In *Frey v. First Nat'l Bank*, the Fifth Circuit provides a roadmap to Rule 23(b)(3)'s predominance inquiry:

> The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation. This inquiry requires us to consider how a trial on the merits would be conducted if a class were certified. This entails identifying the substantive issues that will control the outcome, assessing which issues will predominate, and then determining whether the issues are common to the class, a process that ultimately prevents the class from degenerating into a series of individual trials. In order to predominate, common issues must constitute a significant part of the individual cases.

602 F. App'x  at 169–70 (citations omitted).

Common questions of law or fact predominate in this case in two ways. First, two issues control the outcome of this case, are common to this class, and would constitute a significant part of the individual cases if class members' cases were tried individually. *Id.* (citing  *Bell Atl. Corp. v. AT&T Corp.*, 339 F.3d 294, 302 (5th Cir. 2003);  *Jenkins v. Raymark Indus., Inc.*, 782 F.2d 468, 472 (5th Cir. 1986)). Second,

DEPCO's liability, or lack of liability, can be established through common evidence that does not vary among class members. *Frey*, 2013 U.S. Dist. LEXIS 37153, at *18.

The Court notes that at a trial on the merits DEPCO's conduct under these particular leases will be determined by a common standard. Because DEPCO is effectively the sole lessee in this case, determining whether DEPCO breached the implied duty to market gas it owes to all class members will focus on *DEPCO's behavior as lessee*. *See Hankins*, 11 S.W.3d at 71 (emphasis added). Plaintiffs' claims for breach of the implied duty to market intrinsically support the assertion that DEPCO's liability, or lack thereof, can be established through common evidence and that common issues control the outcome of this case.

### a)  Common Issues

To establish DEPCO's liability at a trial on the merits, Plaintiffs must show that DEPCO breached the implied duty to market gas it owes to all class members. At trial Plaintiffs must show that DEPCO breached the class leases or violated Texas law by either: (1) agreeing to terms in the GPPA that reduced the price on which royalty payments were based through an unreasonable processing fee, when DEPCO could have reasonably obtained a higher price through a lower processing fee from DGS but failed to do so; or (2) by failing to monitor and take action to recover any profits DGS generated from the subsequent sale of residue gas to third parties. These liability issues control the outcome of this case, are common to this class, and would

24

constitute a significant part of the individual cases if class members' cases were tried individually. *Frey,* 602 F. App'x at 169–70. These common questions of law or fact predominate over any individual issues.

If Plaintiffs successfully establish DEPCO's liability, damages can be calculated using one methodology that applies unvaryingly to each class member. Damages related to DEPCO's sale of gas to DGS, if any, can be calculated by determining the difference between the higher GPPA processing fee charged to all class members and the lower processing fee that should have been charged to all class members. Similarly, damages related to DEPCO's alleged failure to recover profits earned by DGS on sales of gas to third parties can be calculated by determining the difference between the monthly objective weighted average sales price and DGS's actual sales price. The resolution of these matters will impact all class members' claims. *See id.* at 170. These issues will control the outcome of this case, are common to the class, and are consequently predominant. *Id.*

### b)      Common Evidence

The common evidence in this case generally falls into two categories: evidence of DEPCO's implied duty to market; and evidence of DEPCO's alleged breach of the implied duty to market. As explained in detail above, nine standard lease forms and Texas law control the class members' claims and create the duty on which class members base their claims. *See* Sec. III. B. 2, *supra.* Class members' leases are not identical, but since the duty to market exists in all class members' leases at issue in

this case, the leases are common evidence of DEPCO's uniform obligation to all class members.

Plaintiffs argue, and the Court agrees, that evidence of DEPCO's alleged breach is also common to all class members. DEPCO allegedly used a uniform methodology when calculating the royalties it owed all class members on gas processed at the Bridgeport Plant and DEPCO paid each class member royalties based on the prices established by the GPPA, which Plaintiffs allege included an unreasonable 17.5 percent processing fee. Evidence supporting or undermining these allegations is common to all class members because DEPCO allegedly used a uniform methodology for all gas processed at the Bridgeport Plant. All of class members' gas was processed through the Bridgeport Plant and sold to DGS pursuant to the terms of the GPPA. Plaintiffs' allegations involve an ongoing course of conduct applicable to all class members. For the same reasons, evidence of whether DEPCO could have obtained a better price for itself and royalty owners or whether DEPCO failed to recoup DGS profits under the circumstances will be common to all class members.

DEPCO raises several individualized issues such as the class members had different lease forms, and that there are numerous examples of amendments and modifications made to the individual leases of the class members.  The Court finds that DEPCO fails to disprove Plaintiffs assertion that the issues common to the class members predominate over any issues affecting individual members. Plaintiffs' burden is to "show that common issues predominate, not that there are no individual

issues to be resolved." *Frey*, 602 F. App'x at 170.   The duty to market exists in all class members' leases at issue and the evidence of DEPCO's alleged breach of their duty to market does not vary among class members.   The inquiry of whether DEPCO is liable to the class members can be established by evidence that is common among all class members, which supports Plaintiffs' assertions that questions of law or fact predominate.   Plaintiffs have satisfied their burden and shown that questions of law or fact common to class members predominate over questions that affect individual members.

### 2.    Superiority

In determining whether a class action is superior to other available methods for fairly and efficiently adjudicating the controversy the Court examines, among other things, the following factors: (1) the class members' interest in individually controlling their separate actions; (2) the extent and nature of existing litigation by class members concerning the same claims; (3) the desirability of concentrating the litigation in a particular forum; and (4) the likely difficulties of managing a class action. *See* FED. R. CIV. P. 23(b)(3).

The Court recognizes that other courts have denied certification of royalty owner classes asserting claims for breach of the implied covenant to market for a variety of reasons. This case presents unique circumstances which account for the shortcomings of royalty owner classes in other similar cases. Plaintiffs have narrowed

the class in this case to include only royalty owners with proceeds leases. Plaintiffs have also "provided classwide evidence" to support their allegations that DEPCO failed to diligently market the gas and obtain a reasonable price for a class of lessors. *Bowden*, 247 S.W.3d at 702 ("[I]t might be possible under certain circumstances to show that a lessee failed to diligently market the gas and obtain a reasonable price for a class of lessors."). The central legal and factual issues in this litigation are common to all class members and these common issues predominate over individual claims. The Court concludes that resolution of these claims on a classwide basis is not only manageable, but is also the most efficient method for adjudicating this controversy.

Additional practical concerns and principles of judicial economy persuade the Court that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. This Court has previously noted that class actions are considered superior when individual actions would be wasteful, duplicative, and be adverse to judicial economy. *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 627 (5th Cir. 1999). Rule 23 is designed to further procedural fairness and efficiency. *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 402 (2010). As Plaintiffs point out, this case requires the Court to revisit the same issues addressed by Judge Solis in *Shoop*. Notably, *Shoop* lasted more than two years and had 172 docket entries. This case was first filed in October of 2014 and currently has 186 docket entries. "A federal class action is . . . designed to avoid, rather than

encourage, unnecessary filing of repetitive papers and motions." *American Pipe & Const. Co. v. Utah*, 414 U.S. 538, 550 (1974).

The Court concludes that the benefits of litigating this case as a class action significantly outweigh the costs of litigating thousands of individual cases to class members, DEPCO, and the judiciary. For these reasons, the Court finds that a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

## V.      Conclusion

The Court finds that Plaintiffs' proposed class is adequately defined and clearly ascertainable. Further, the class meets all four prerequisites of Federal Rule of Civil Procedure 23(a) and satisfies the predominance and superiority requirements of Federal Rule of Civil Procedure 23(b). Upon reconsideration, the Court **GRANTS** Plaintiffs' Motion for Class Certification.

The Court **ORDERS** that the above-captioned action is certified to proceed as a class action pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of a class (the "Class") consisting of:

> All person or entities who, between January 1, 2008 and February 28, 2014, (i) are or were royalty owners in Texas wells producing natural gas that was processed through the Bridgeport Gas Processing Plant by Devon Gas Services, LP ("DGS"); (ii) received royalties from Devon Production Company, L.P. ("DEPCO") on such gas; and (iii) had oil and gas leases that were on one of the following forms: Producers 88-198(R) Texas Paid-Up (2/93); MEC 198 (Rev. 5/77); Producers 88 (Rev

10-70 PAS) 310; Producers 88 Revised 1-53—(With Pooling Provision); Producers 88 (2-53) With 640 Acres Pooling Provision; Producers 88 (3-54) With 640 Acres Pooling Provision; Producers 88 (4-76) Revised Paid Up with 640 Acres Pooling Provision; Producers 88 (7-69) With 640 Acres Pooling Provision; and Producers 88 (Rev. 3-42) With 40 Acres Pooling Provision ("The Class Lease Forms").

The persons or entities excluded from the Class are: (a) overriding royalty interest owners who derive their interest through the oil and gas lease; (b) all governmental entities, including federal, state and local governments and their respective agencies, departments, or instrumentalities; (c) the States and territories of the United States or any foreign citizens, states, territories or entities; (d) the United States of America; (e) publicly traded entities and their respective parents, affiliates, and related entities; (f) owners of any interests and/or leases located on or within any federally created units; (g) owners of any non-operating working interest for which DEPCO or its agents or representatives, as operator, disburses royalty; (h) DEPCO and any entity in which DEPCO has a controlling interest, and their officers, directors, legal representatives and assigns; and (i) members of the judiciary and their staff to whom this action is assigned.

The Court further **ORDERS** that Henry Seeligson, John M. Seeligson, Suzanne Seeligson Nash, and Sherri Pilcher are appointed as Class Representatives; and Kessler Topaz Meltzer & Check, LLP, the Seidel Law Firm, P.C., Wick Phillips Gould & Martin, LLP, and Mattingly & Roselius, PLLC are appointed as Class Counsel.

**SO ORDERED.**

Signed January 6th, 2017.

_Ed Kinkeade_
ED KINKEADE
UNITED STATES DISTRICT JUDGE